FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Sep 21, 2017

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| MELISSA GOETZ, beneficiary and as Personal Representative of the Estate of Michael D. Greever,<br><br>        Plaintiff,<br><br>    v.<br><br>LIFE INSURANCE COMPANY OF NORTH AMERICA,<br><br>        Defendant. | No.   2:16-CV-0441-SMJ<br><br>**ORDER DENYING CROSS MOTIONS FOR SUMMARY JUDGMENT AND ENTERING JUDGMENT ON THE RECORD IN FAVOR OF DEFENDANT** |

On September 5, 2017, the Court held a hearing on the parties' cross motions for summary judgment, ECF Nos. 32 and 37. The Court denied both motions. The Court also heard oral argument on Ms. Goetz's underlying benefits claim and took the matter under advisement. This Order supplements and memorializes the Court's order on the motions for summary judgment and enters judgment in favor of LINA on the basis of the administrative record.

## I.    INTRODUCTION

This case arises from Ms. Goetz's claim for accidental death benefits following the death of her brother, Michael Greever. On October 11, 2015, Michael Greever was found dead in his mother's swimming pool. ECF No. 36-4 at 4. The

ORDER - 1

medical examiner determined his cause of death was drowning, but there were no witnesses to the accident itself. ECF 36-2 at 83. Accordingly, it was not apparent what caused Mr. Greever's fall into the pool or why he failed to extricate himself from the water. The autopsy did not reveal any trauma to the head or neck, but the medical examiner noted Mr. Greever had a bite mark on his tongue. ECF No. 36-2 at 12. Because Mr. Greever had a history of epilepsy, the medical examiner presumed a seizure had precipitated the fall. ECF No. 36-1 at 111. The death certificate notes causes of death as "drowning" caused by "presumed epileptic seizure." ECF No. 36-2 at 83.

Shortly after Mr. Greever's death, Ms. Goetz submitted a claim for accidental death benefits under his Group Accident Policy No. OK 966394 (the Policy) with Life Insurance Company of North America (LINA). ECF No. 36-1 at 1. LINA denied Ms. Goetz's claim, finding Mr. Greever's death was not covered under the Policy. The Policy contains two "sole-cause" clauses that limit the scope of coverage. The first defines a Covered Loss as the "result, directly and independently of all other causes, of a Covered Accident." *Id.* at 27. The second defines a Covered Accident as a sudden and unforeseeable accident that "is not contributed to by disease, Sickness, mental or bodily infirmity." *Id.* LINA denied Ms. Goetz's claim, reasoning that the loss was not the result of a covered accident because Mr.

Greever's fall was caused by an epileptic seizure. ECF No. 36-2 at 36. Ms. Goetz appealed, and LINA affirmed its decision. ECF No. 36-1 at 67.

Both parties move for summary judgment under Federal Rule of Civil Procedure 56. Because a substantial issue of material fact exists as to whether Mr. Greever's epilepsy contributed to his drowning accident, summary judgment is not proper. LINA also moves for judgment under Rule 52. ECF No. 37 at 9. Because this is an ERISA case reviewing the plan administrator's decision *de novo*, judgment under on the record is proper in this case. There is some conflicting evidence regarding whether Mr. Greever suffered a seizure immediately prior to his drowning accident. However, the lack of physical evidence supporting an alternative explanation makes a seizure the most likely cause of death. Because Ms. Goetz has the burden to show Mr. Greever's epilepsy did not substantially contribute to his accident, entry of judgment in favor of the LINA is proper.

## II. BACKGROUND

### A. ERISA Policy

LINA issued a Group Accident Policy No. OK 966394 to Mr. Greever's employer, Wagstaff, Inc. No. 36-1 at 15. The Policy is governed by ERISA. *Id.* at 45-46. The Policy provides accidental death benefits as follows:

ACCIDENTAL DEATH AND DISMEMBERMENT BENEFITS

Covered Loss        We will pay the benefit for any one of the Covered Losses listed in the Schedule of Benefits, if the Covered Person suffers a Covered Loss resulting directly and independently of all other causes from a Covered Accident within the applicable time period specified in the Schedule of Benefits.

*Id.* at 40. The Policy also includes the following definitions:

Covered Accident  A sudden, unforeseeable, external event that results, directly and independently of all other causes, in a Covered Injury or Covered Loss and meets all of the following conditions:
1. occurs while the Covered Person is insured under this Policy;
2. is not contributed to by disease, Sickness, mental or bodily infirmity;
3. is not otherwise excluded under the terms of this Policy.

Covered Loss        A loss that is all of the following:

1. the result, directly and independently of all other causes, of a Covered Accident;
2. one of the Covered Losses specified in the Schedule of Covered Losses;
3. Suffered by the Covered person within the applicable time period in the Schedule of Benefits.

*Id.* at 27. The Policy contains the following sickness exclusion:

In addition to any benefit-specific exclusions, benefits will not be paid for any Covered Injury or Covered Loss which, directly or indirectly, in whole or in part, is caused by or results from any of the following unless coverage is specifically provided for by name in the Description of Benefits Section:

*     *     *

ORDER - 4

7. Sickness, disease, bodily or mental infirmity, bacterial or viral infection or medical or surgical treatment thereof . . . .

*Id.* at 32.

**B.    Loss Facts and Investigation**

On October 11, 2015, Michael Greever was winterizing a swimming pool at his mother's home. ECF No. 36-4 at 4. Shortly before his death, his mother, Cindy Greever, observed Mr. Greever standing near the pool talking on the phone. *Id.* Ms. Greever then left the pool area and returned approximately five minutes later. *Id.* At that time, she discovered Mr. Greever floating face-down in the deep end of the pool. *Id.* There were no witnesses to the accident.

Mr. Greever had a history of epilepsy resulting in tonic-clonic (grand mal) seizures. He also had a heart condition for which he was taking medication at the time of his death. *See* 36-3 at 115–16. Mr. Greever had not experienced a seizure in several years. ECF 36-1 at 111. Some records indicate his last seizure was eighteen years prior to his death. *Id.* However, an electroencephalogram (EEG) performed in 2005 indicated Mr. Greever had "spikes" and wave epileptiform complexes, making him at risk for future epileptic seizures. *Id.* Mr. Greever was prescribed seizure medication but had not filled the prescription since February 3, 2009. ECF No. 36-3 at 116.

When police arrived, the investigating officer asked Ms. Greever about her son's medical history. *Id.* She advised the officer that Mr. Greever had suffered seizures until about ten years prior, at which time the seizures stopped and he was taken off medication. *Id.* She also advised the officer that Michael had not consumed alcohol that day, but had "tied one on" the previous evening and was tired. ECF No. 36-3 at 3. The investigating officer asked medical responders whether there was any sign Mr. Greever had hit his head and was told Mr. Greever had a mark on his right temple. *Id.* The officer then searched the edge of the pool and ladder railings for blood but found none. *Id.*

Medical Examiner Sally Aiken, M.D. (Forensic Pathologist) for the Spokane County Office of the Medical Examiner performed an autopsy of Mr. Greever on October 13, 2015, two days after his death. ECF No. 36-1 at 110. In the accompanying autopsy report, the Medical Examiner summarized her case findings. The autopsy report indicated Mr. Greever had various cuts and bruises on his face, mouth, and body. *Id.* at 116. The report noted that some of the injuries may have been caused during death and that others may have been caused during resuscitation attempts and later tissue donation. *Id.* at 116–17.

> The autopsy did not indicate signs of a significant injury to the head: Reflection of the scalp shows . . . no areas of subgaleal hemorrhage. The calvarium is intact. Removal of the calvarium shows the epidural space to be normal. Likewise, no collections of subdural blood are present."

*Id.* at 118.

Importantly, the autopsy report noted an abrasion on the tip of Mr. Greever's tongue 1.5 cm and a hemorrhage "[e]xtending from the tip backwards into deep musculature." *Id.* at 118. The hemorrhage was approximately "1-1/2 inches." *Id.*

The death certificate, dated November 10, 2015, reported the cause of death as "drowning" caused by "incapacitation in water during presumed epileptic seizure." ECF 36-2 at 83. The Medical Examiner described the circumstances of the injury as "[w]orking around swimming pool, found unresponsive in water, history of epilepsy." *Id.* The manner of death was listed as "[a]ccident." *Id.*

## C.   Claims Administration

After Mr. Greever's death, Ms. Goetz made certain claims for benefits, including both life benefits and accidental death benefits. ECF No. 36-1 at 1. LINA approved her claim for group term life insurance but denied her accidental death benefits claim. *Id.*; ECF No. 36-2 at 36 (initial decision).

On February 25, 2016, LINA denied Ms. Goetz's claim under the Policy, relying on the Medical Examiner's report and a review of records to conclude that (1) Mr. Greever's death did not qualify as a "Covered Accident" and (2) coverage was precluded by the sickness exclusion. *Id.* at 243–46. Ms. Goetz appealed the denial, challenging the Medical Examiner's conclusion that a seizure contributed to the drowning. *Id.* at 1.

Ms. Goetz retained Dr. Carl Wigren, a forensic pathologist to review the case. ECF No. 36-1 at 125. Dr. Wigren opined that there was insufficient evidence to render an opinion that Mr. Greever's drowning was precipitated by an epileptic seizure. *Id.* He concluded that the presumption of an epileptic seizure was improper. *Id.* Dr. Wigren noted that the Physicians' Handbook on Medial Certification of Death, published by the Department of Health and Human Services, Centers for Disease Control, prescribes certain protocols in preparing death certificates. *Id.* Specifically, if a physician believes a particular condition cannot be definitively diagnosed, the condition should be listed as "probable" or "possible." *Id.*

Dr. Wigren advanced several alternative interpretations of the medical evidence. *Id.* He noted the injuries to Mr. Greever's face, hand, elbow and armpit suggest that he fell into the pool facing the pool's edge and that he attempted to reach out and arrest his fall. *Id.* He also noted that the tongue injury may have been the result of intubation. *Id.* Dr. Wigren cited medical literature that tongue hemorrhages during resuscitation and intubation are well-documented. *Id.* Dr. Wigren also noted that one of the stages of drowning is cerebral hypoxia, which causes the drowning victim to go into seizure. *Id.* He explained that the initial shock stage of drowning causes the victim to aspirate water, rendering them unable to move or call for help. *Id.*

Finally, Dr. Wigren postulated an alternative explanation for Mr. Greever's fall. Dr. Wigren noted that the date of Mr. Greever's death was windy with gusts reaching 37–39 miles per hour. *Id.* at 126. He also noted that a cigarette lighter was found close to the edge of the pool near the deep end, where Mr. Greever's body was discovered. Dr. Wigren asserted:

> A reasonable conclusion from this evidence is that Mr. Greever was attempting to light a cigarette in windy conditions and turned away from the pool to block the wind. He then either stepped backwards into the pool, or was blown back into the pool by a gust of wind. Mr. Greever likely aspirated some water due to the initial shock of fall and injuries or was rendered unconscious from striking his head on the cement pool edge. The initial aspiration of water then began the drowning sequence.

*Id.* at 128.

LINA retained Dr. Scott Denton, a forensic pathologist, to conduct a records review. *Id.* at 80–83. Dr. Denton concluded to a reasonable degree of medical certainty that the Medical Examiner's conclusion was correct. *Id.* He opined that the presence of a tongue injury such as that observed on Mr. Greever is a reasonably reliable indication of a seizure. *Id.* at 81–82. Dr. Denton concluded that the most reasonable cause of death was drowning precipitated by a seizure disorder because "there is no evidence that Mr. Greever sustained any injury that would have prevented him from exiting the water had he simply just fallen into the pool." *Id.* at 81.

On October 19, 2016, LINA affirmed its denial. LINA provided Ms. Goetz a detailed letter explaining its decision. ECF No. 36-1 at 67–77.

## III. LEGAL STANDARDS

### A. Summary Judgment

Summary judgment is appropriate if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Once a party has moved for summary judgment, the opposing party must point to specific facts establishing that there is a genuine dispute for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). If the nonmoving party fails to make such a showing for any of the elements essential to its case for which it bears the burden of proof, the trial court should grant the summary judgment motion. *Id.* at 322. "When the moving party has carried its burden under Rule [56(a)], its opponent must do more than simply show that there is some metaphysical doubt as to the material facts. . . . [T]he nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (internal citation omitted). When considering a motion for summary judgment, the Court does not weigh the evidence or assess credibility; instead, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

**B.     Rule 52**

*De novo* review on ERISA benefits claims is typically conducted as a bench trial with the court entering findings of fact and conclusion of law under Rule 52. *See Lafferty v. Providence Health Plans*, 706 F. Supp. 2d 1104, 1109 (D. Or. 2010). The court must evaluate the persuasiveness of conflicting testimony and decide which is more likely true. *Kearney v. Standard Ins. Co.*, 175 F.3d 1084, 1094–95 (9th Cir. 1999).

The Ninth Circuit has held that a district court may try an ERISA case on the record that the administrator had before it. *Id.* at 1094. The district court may consider new evidence only when "circumstances clearly establish it is necessary to conduct an adequate *de novo* review of the benefit decision." *Mongeluzo v. Baxter Travenol Long Term Disability Ben. Plan*, 46 F.3d 938, 944 (9th Cir. 1995) (quoting *Quesinberry v. Life Ins. Co. of N. Am.*, 987 F.2d 1017, 1025 (4th Cir. 1993)). In most cases, however, the district court should look only at the evidence that was before the plan administrator at the time of the determination. *Id.*

## IV.    SUMMARY JUDGMENT

**A.     Because genuine issues of material fact exist regarding whether Mr. Greever's seizure disorder substantially contributed to his drowning accident, summary judgment for Plaintiff is improper.**

Ms. Goetz asserts two grounds upon which she argues she is entitled to judgment as a matter of law. First, she argues that a preexisting condition that

contributes to an accident resulting in loss is not a proximate cause of the loss for the purpose of insurance claims. Second, Ms. Goetz argues that LINA's interpretation of the Policy violates Wash. Rev. Code (RCW) § 48.30.300. Both arguments fail as a matter of law. The outcome of this case will therefore turn on whether Ms. Goetz is entitled to benefits under the Policy. In ERISA cases, the claimant bears the initial burden of establishing the claim falls within the scope of coverage. *Jenkins v. Montgomery Indus.*, 77 F.3d 743 (4th Cir. 1996). Thus, Ms. Goetz must establish that Mr. Greever's epilepsy did not substantially contribute to the drowning accident that lead to his death. Because substantial questions of material fact remain on this issue, summary judgment is inappropriate.

    1.    <u>Ms. Goetz must establish Mr. Greever's pre-existing condition did not substantially contribute to his drowning accident.</u>

Federal common law governs interpretation of insurance policies under ERISA. ERISA broadly preempts state common law rules related to employee benefit plans. 29 U.S.C. § 1144(a); *Evans v. Safeco Life Ins. Co.*, 916 F.2d 1437, 1439 (9th Cir. 1990). ERISA contains a savings clause exempting from preemption "any law of any state which regulates insurance," 29 U.S.C. § 1144(b)(2)(A), but "state laws of insurance policy interpretation do not qualify for the saving clause exception and are preempted." *Evans*, 916 F.2d at 1440. Instead, "the interpretation of ERISA insurance policies is governed by a uniform federal common law." *Id.* at 1439.

Circuit courts have split on the interpretive approach applied to policies that, as here, require covered accidents or losses result "directly and independently of all other causes" ("sole-cause" clauses). The Sixth and Tenth Circuits have held that sole-cause language precludes recovery unless (1) the loss results directly from accidental bodily injury and (2) the loss results independently of all other causes. *Pirkheim v. First Unum Life Ins.*, 229 F.3d 1008, 1010 (10th Cir. 2000); *Criss v. Hartford Acc. & Indem. Co.*, No. 91-2092, 1992 WL 113370 (6th Cir. May 28, 1992). The Fourth and Eleventh Circuits have adopted a less rigid analysis. Under this "middle ground" test, a "pre-existing infirmity or disease is not considered a cause unless it substantially contributed to the disability or loss." *Dixon v. Life Ins. Co. of N. Am.*, 389 F.3d 1179, 1184 (11th Cir. 2004); *Adkins v. Reliance Standard Life Ins. Co.*, 917 F.2d 794 (4th Cir. 1990). In other words, a plaintiff cannot recover if a pre-existing condition substantially contributed to the injury or loss.

The Ninth Circuit has adopted a modified version of the Fourth Circuit's "substantially caused" test. *McClure v. Life Ins. Co. of N. Am.*, 84 F.3d 1129, 1136 (9th Cir. 1996). Under the Ninth Circuit's approach, the threshold inquiry is whether the policy language is conspicuous. *Id.* If the language is inconspicuous, the loss is covered if the accident was the "predominant, as opposed to remote, cause of the injury." *Id.* (adopting the test articulated by the district court in *Henry v. Home Ins. Co.*, 907 F. Supp. 1392, 1394 (C.D. Cal. 1995)). This test is meant to protect the

reasonable expectation of the insured "even though a careful examination of the policy provisions indicates that such expectations are contrary to the expressed intention of the insurer." *McClure*, 84 F.3d at 1135 (quoting *Saltarelli v. Bob Baker Group Med. Trust,* 35 F.3d 382, 386 (9th Cir. 1994)). If, however, the language is conspicuous, the "substantially contributed test" applies. *Id.* at 1136. Under this stricter test, coverage may be denied "even though the claimed injury was the predominant or proximate cause of the disability." *Id.*

Ms. Goetz asserts that the substantially contributed test does not apply in this case. ECF No. 47 at 2. She argues that the Policy's sole-cause language does not preclude recovery because the drowning accident was the proximate cause of Mr. Greever's death, regardless of what caused the accident. *Id.* Many of the cases Ms. Goetz cites predate ERISA or apply Washington law. *See U.S. Fid. & Guar. v. Blum*, 270 F. 946 (9th Cir. 1921); *Scanlon v. Life Ins. Co. of N. Am.*, 670 F. Supp. 2d 1181 (W.D. Wash. 2009) (applying Washington Consumer Protection Act). However, a line of federal ERISA cases stands for the same proposition. *See, e.g.*, *Ferguson v. United of Omaha Life Ins. Co.*, 3 F. Supp. 3d 474 (D. Md. 2014) (sole-cause loss clause did not bar coverage where insured's epilepsy resulted in accidental drowning); *Kellogg v. Met. Life Ins. Co.*, 549 F.3d 818 (10th Cir. 2008) (sole-cause loss clause did not preclude recovery where heart attack caused car accident resulting in fatal injuries); *Johnson v. Life Investors' Ins. Co.*, 98 F. App'x.

814 (10th Cir. 2004) (sole-cause loss clause did not prevent recovery where insured who had muscular dystrophy and a history of falls died from complications resulting from a fall); *Vickers v. Boston Mut. Life Ins. Co.*, 135 F.3d 179 (1st Cir. 1998) (sole-cause loss clause did not preclude coverage where heart attack caused car accident leading to fatal injuries).

*Kellogg v. Metropolitan Life* is the leading case regarding the accident/loss distinction. In that case, a witness observed the insured experience an apparent seizure immediately before driving off the road and crashing into a tree. *Kellogg* 549 F.3d at 820. The insured later died of a brain hemorrhage resulting from injuries sustained in the crash. *Id.* at 820. The insured was covered under a policy that provided benefits if the insured had an "accidental injury that is the Direct and Sole Cause of a Covered Loss." *Id.* at 821. The policy defined "Direct and Sole Cause" as a "direct" and "independent" cause of loss. *Id.* The policy also contained an exclusionary clause exempting from coverage "any loss . . . caused or contributed to by . . . physical or mental illness or infirmity . . . ." *Id.* at 829. The insurer denied coverage under the plan, reasoning the accident would not have happened but for the insured's illness. *Id.* The Tenth Circuit rejected that rationale, concluding "the car crash—not the seizure—caused the loss at issue, i.e., [the insured's] death, and therefore the exclusionary clause of the policy does not apply." *Id.* at 831.

Ms. Goetz's reliance on the reasoning articulated in *Kellogg* and its progeny is misplaced. *Kellogg* stands for the proposition that a sole-cause clause regarding loss will not preclude coverage where a preexisting condition contributes to an accident that proximately causes a loss. Here, the Policy language at issue requires that the insured suffer both a Covered Accident and a Covered Loss. Because the Policy contains sole-cause clauses addressing both the accident and the loss, the *Kellogg* rule does not apply. Indeed, the *Kellogg* court acknowledged its decision applied only to sole-cause loss clauses: "[The insurer] could have drafted the policy to exclude losses resulting from *accidents* caused by injury or illness." *Kellogg*, 549 F.3d at 832 n.5 (emphasis added).

Ms. Goetz does not dispute the conspicuousness of the language in the Policy. Accordingly, Ms. Goetz must show that both the accident and the loss were not substantially contributed to by Mr. Greever's preexisting condition.

2. <u>LINA is not estopped from arguing the legal interpretation of its policy.</u>

Ms. Goetz next argues that LINA should be estopped from arguing the legality of its interpretation because it failed to do so during the administrative appeals process. ECF No. 32 at 13. In making this argument, Ms. Goetz appears to imply that LINA's decision letters were inadequate because they did not address her argument that its policy violates RCW 48.30.300. This argument fails, however, because LINA's decision letters were sufficiently detailed to comply with the

statutory requirements under 29 C.F.R. § 2560.503-1(g)(1)(i)-(iv). Further, the Court's analysis of the legality of LINA's policy language is a question of law unaffected by the administrative record.

ERISA claimants are entitled to a timely and specific explanation of benefit denials. 29 C.F.R. § 2560.503-1(g)(1)(i)-(iv). The insurer should articulate the reasons for a claim decision in a manner calculated to be understood by the participant. 29 U.S.C. § 1331. When an insurer fails to provide adequate notice, courts have held that claimants may not be "sandbagged" by post-hoc justifications of plan decisions. *Marolt v. Alliant Techsystems, Inc.*, 146 F.3d 617, 620 (8th Cir. 1998). Notice is inadequate when it is so lacking in detail as to deprive the claimant of a "meaningful dialogue between the plan administrators and their beneficiaries." *Booton v. Lockheed Med. Benefit Plan*, 110 F.3d 1461, 1463 (9th Cir. 1997); *see also Weaver v. Phoenix Home Life Mut. Ins. Co.*, 990 F.2d 154, 158 (4th Cir. 1993) (holding a decision letter stating only that coverage had been partially denied because "confinement lasted longer than time authorized" provided insufficient notice); *White v. Jacobs Eng'g Grp. LTD Benefit Plan,* 896 F.2d 344, 350 (9th Cir. 1989) (holding decision letter from adjuster stating only that "information in [its] file" indicated claimant was "gainfully employed" provided inadequate notice).

Here, LINA's two decision letters provided all relevant information required under 29 C.F.R. § 2560.503-1(g)(1)(i)-(iv). The letters explained the reasons for the

denial under the applicable facts and policy provisions. The fact that LINA's letters did not include complex legal arguments does not preclude it from expanding on its reasoning here. Indeed, an action at law is a more appropriate forum in which to advance legal theory than the non-adversarial claims process contemplated under ERISA. *See Vaught v. Scottsdale Healthcare Corp. Health Plan*, 546 F.3d 620, 630 (9th Cir. 2008) (holding issue exhaustion is not required at the administrative level in light of ERISA's non-adversarial claims process).

> ### 3. LINA's policy does not violate RCW 48.30.300 because coverage does not depend on the presence of any disability.

Finally, Ms. Goetz asserts that LINA's policy violates RCW 48.30.300 because it denies coverage to similarly situated individuals on the basis of preexisting disabilities. ECF No. 32 at 12. RCW 48.30.300 prohibits insurers from discriminating "on the basis of the presence of any sensory, mental, or physical handicap of the insured or prospective insured." A plan discriminates "on the basis" of a statutorily protected attribute when coverage turns exclusively on the presence or absence of that attribute. A disparate impact implicating an individual with a protected attribute is not alone sufficient to establish violation of RCW 48.30.300. *Compare State Farm Gen. Ins. Co. v. Emerson*, 687 P.2d 1139 (Wash. 1984) (upholding definition of insured restricting recovery to family members even though it resulted in disparate treatment of married and unmarried couples), *with Johnson v. Met. Prop. & Cas. Ins. Co.*, 2010 WL 532449 (Feb. 16, 2010 Wash. Ct.

App.) (holding clause restricting coverage to insured's "spouse" violated RCW 48.30.300 because coverage turned "exclusively on marital status").

Here, coverage does not turn exclusively on the presence or absence of a disability. LINA did not deny coverage because Mr. Greever suffered from epilepsy. Rather, it denied coverage because his manner of death fell within a causative pattern beyond the scope of coverage. Namely, LINA concluded Mr. Greever's preexisting condition substantially contributed to his drowning accident, which lead to his death. ECF No. 36-2 at 36. If Mr. Greever had been struck by lightning, fallen from a building, or drowned in an accident not precipitated by his epileptic condition, he would have been covered under the terms of the Policy. Accordingly, the terms of the Policy do not violate RCW 48.30.300, and Ms. Goetz's claim fails as a matter of law.

4. <u>Genuine issues of material fact preclude summary judgment in Ms. Goetz's favor.</u>

As the moving party, Ms. Goetz must show the undisputed facts establish Mr. Greever's drowning accident was not caused, even in part, by his preexisting epilepsy. Ms. Goetz cannot meet this burden. There is a genuine issue of material fact as to whether Mr. Greever suffered a seizure immediately prior to his death. Both parties have produced plausible, conflicting interpretations of the available evidence. Determination of this case therefore requires the Court to weigh these

competing interpretations in light of the available evidence. Accordingly, Ms. Goetz cannot meet her burden and summary judgment in her favor is not proper.

**B.    The same issues of material fact preclude summary judgment in LINA's favor.**

LINA advances two arguments in support of its motion for summary judgment. First, LINA argues that Mr. Greever's death certificate conclusively establishes that his drowning accident was contributed to by a seizure as a matter of law under RCW 70.58.180. ECF No. 37 at 10. Second, LINA asserts that Ms. Goetz will be unable to meet her burden to establish by a preponderance of the evidence that Mr. Greever's epilepsy did not substantially contribute to his fatal drowning accident. *Id.* at 13. Both arguments fail. The conflicting medical interpretations advanced by Drs. Denton and Wigren illustrate Ms. Goetz has raised a genuine issue of material fact sufficient to resist LINA's motion for summary judgment.

1.    <u>RCW 70.58.180 does not bar Ms. Goetz from disputing whether Mr. Greever's drowning accident was caused by a seizure.</u>

RCW 70.58.180 provides,

The cause of death, the manner and mode in which death occurred, as noted by the coroner or medical examiner . . . and incorporated in the death certificate filed with the department shall be the legally accepted manner and mode by which the deceased come to his or her death and shall be the legally accepted cause of death.

Courts have applied this statute to preclude plaintiffs from disputing the cause of death in actions against insurance companies. *See MacLay v. M/V SAHARA*, 926 F.

ORDER - 20

Supp. 2d 1209, 1217 (W.D. Wash. 2013) (taking judicial notice of the mode and manner of death based on the death certificate); *Lloyd v. Valley Forge Life Ins. Co.*, 2007 WL 2410010 (W.D. Wash. Aug. 20, 2007) (enforcing cause of death in death certificate in dispute over life insurance proceeds).

LINA asserts that RCW 70.58.180 requires the court to conclusively accept the cause of death stated on Mr. Greever's death certificate. ECF No. 37 at 10. LINA argues the death certificate's identification of Mr. Greever's cause of death as "drowning" caused by "incapacitation in water during presumed epileptic seizure" therefore prohibits Ms. Goetz from disputing whether Mr. Greever suffered a seizure prior to his death. *Id.* But this interpretation is too broad. LINA's interpretation would confer upon the certificate a certainty the language does not imply. It would transform a presumption into an irrefutable conclusion. The plain language of RCW 70.58.180 does not indicate any such intent on the part of the legislature. *See United States v. Acevedo-De La Cruz*, 844 F.3d 1147, 1150 (9th Cir. 2017) ("When interpreting a state statute of conviction, we look to the state's rules of statutory construction."); *State v. Delgado*, 63 P.3d 792, 795 (Wash. 2003) ("[The court] cannot add words or clauses to an unambiguous statute when the legislature has chosen not to include that language."). RCW 70.58.180 prohibits Ms. Goetz from arguing Mr. Greever's cause of death was anything other than

drowning. It does not, however, bind the Court to accept the medical examiner's presumption of a seizure as a matter of law.

    2.    <u>Ms. Goetz has created a genuine issue of material fact sufficient to survive LINA's motion for summary judgment.</u>

Although LINA has produced substantial evidence to support its theory of Mr. Greever's cause of death, it cannot establish that there is no genuine issue of material fact. Mr. Greever's death certificate states only a presumption that Mr. Greever suffered a seizure before his drowning accident. ECF No. 36-2 at 90. Ms. Goetz's retained expert, Dr. Wigren, advanced non-frivolous alternative interpretations of the available facts that would support a different finding as to Mr. Greever's cause of death. *See* ECF No. 36-1 at 28. Construing all evidence and inferences to be drawn therefrom in the light most favorable to the nonmoving party, LINA cannot carry its burden. Accordingly, LINA is not entitled to summary judgment.

## V.    **FINDINGS OF FACT AND CONCLUSIONS OF LAW**

In addition to its motion for summary judgment, LINA moves for judgment in its favor on Ms. Goetz's ERISA claim under Fed. R. Civ. P. Rule 52. Ms. Goetz does not oppose judgment on the record. ECF No. 42 at 17.

The undisputed facts in the administrative record provide a sufficient basis for entry of judgment on the record. The facts surrounding Mr. Greever's death are undisputed. At oral argument, Ms. Goetz did not challenge the administrative record

or assert that judgment on the record would be improper. The Court therefore need only weigh the competing interpretations of these facts. Specifically, the Court must determine whether Ms. Goetz can show by a preponderance of the evidence that a seizure did not substantially contribute to Mr. Greever's drowning accident. *See Muniz v. Amec Const. Mgmt., Inc.*, 623 F.3d 1290, 1294 (9th Cir. 2010) ("[W]hen the court reviews a plan administrator's decision under the de novo standard of review, the burden of proof is placed on the claimant.").

The cause of Mr. Greever's drowning accident remains unknown. Ms. Goetz's retained expert, Dr. Wigren, advances a plausible alternative interpretation of the evidence—that Mr. Greever turned his back to the pool to light a cigarette and fell into the pool, losing consciousness when he entered the water. ECF No. 36-1 at 128. This theory is corroborated by the fact that a lighter was found near the edge of the pool although Mr. Greever's other belongings remained in his pockets when he fell into the water. ECF No. 105. However, the theory is not entirely supported by the evidence. The autopsy did not reveal any significant trauma to the head or neck or provide any other obvious explanation for Mr. Greever's failure to extricate himself from the water after falling in. ECF No. 36-1 at 118. Dr. Wigren argues the abrasion on Mr. Greever's tongue may have been caused by a fall or during intubation. The autopsy report also noted faint tooth impressions on Mr.

Greever's lower lip and a punctate contusion on the upper lip that may be consistent with a fall. ECF No. 36-3 at 79.

By contrast, Dr. Denton opined that the medical examiner's presumption of a seizure better explains Mr. Greever's failure to extricate himself from the water after his fall. *Id.* at 83. Dr. Denton accords great weight to the bite mark on Mr. Greever's tongue as evidence of a tonic-clonic seizure. *Id.* at 80–93. The studies relied upon by Dr. Denton indicate that a tongue bite may be evidence of a seizure or syncope (loss of consciousness): "In syncope, [tongue biting] is usually on the tip of the tongue because of a sudden fall on the chin that causes sudden mouth closure. Lateral tongue biting, however, is more specific for generalized tonic-clonic seizures." ECF No. 36-2 at 12.

The bite mark's reliability as an indicator for a seizure depends on whether it was transverse or lateral. The medical examiner's notes describe the bite mark as follows:

> The tip of the tongue has a 1.5 cm abrasion. Extending from the tip backwards into deep musculature is hemorrhage of the tongue. The hemorrhage extends backward from the tip for a length of about 1–1/2 inches.

ECF No. 36-3 at 79. The report seems to indicate a bite mark on the tip of the tongue as well as evidence that the bite extended backward towards the base of the tongue. This description appears consistent with lateral tongue-biting, a reliable indicator for epileptic seizure. *See* ECF No. 36-2 at 15 (academic study showing tongue biting

is a strong indicator of epileptic seizure in patients with probable epilepsy prior to tongue-biting event).

Ultimately, the weight of the evidence favors of the medical examiner's theory that Mr. Greever suffered a seizure that led to his drowning accident. The presence of a bite mark on the tongue combined with Mr. Greever's history of epilepsy and the lack of trauma to the head or neck makes a seizure the most likely explanation for his accident. Accordingly the Court enters the following findings of fact and conclusions of law.

Findings of Fact:

1. It is more likely than not that Mr. Greever suffered an epileptic seizure on October 11, 2015.

2. The seizure caused Mr. Greever to fall into his mother's pool and rendered him unable to extricate himself from the water.

3. The seizure substantially contributed to Mr. Greever's drowning accident.

Conclusions of Law:

1. Mr. Greever's accidental death does not fall within the terms of the applicable Policy and therefore is not a covered benefit.

2. Ms. Goetz is not entitled to accidental death benefits under the Policy.

# VI.  CONCLUSION

Accordingly, for the reasons discussed, **IT IS HEREBY ORDERED**:

**1.**  Plaintiff's Motion for Summary Judgment, **ECF No. 31**, is **DENIED**.

**2.**  LINA's Motion for Summary Judgment, **ECF No. 37**, is **DENIED**.

**3.**  **JUDGMENT** is to be entered in LINA's favor.

**4.**  The case shall be **CLOSED**.

**IT IS SO ORDERED.**  The Clerk's Office is directed to enter this Order and provide copies to all counsel.

**DATED** this 21st day of September 2017.

_____
SALVADOR MENDOZA, JR.
United States District Judge